FUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 21-CV-61442 – KMM

IVAN FERREIRA-SILVA,

    Plaintiff,

v.

AW PROFESSIONAL & MAINTENANCE SERVICE, INC.;
ANDRADE HOLDINGS, LLC;
BOCA PRO SERVICES, INC.;
and WILMA ANDRADE, an individual,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendants AW PROFESSIONAL & MAINTENANCE SERVICE, INC.; ANDRADE HOLDINGS, LLC.; BOCA PRO SERVICES, INC.; and WILMA ANDRADE, (collectively "Defendants") through their undersigned counsel and pursuant to Southern District of Florida Local Rule 7.5 and Federal Rule of Civil Procedure 56(c), respectfully move this Court to enter summary judgment in their favor as to Plaintiff's Complaint [DE 1], as the undisputed facts and binding case law establish that Defendants are entitled to judgment as a matter of law in their favor on all matters at issue.[1]

---

[1] A statement of undisputed material facts (cited hereinafter as "SOF, ¶___"), has been contemporaneously filed herewith. Excerpts of relevant deposition transcripts, declarations and other materials cited in the statement of undisputed material facts are attached thereto for convenience of reference.

## SUMMARY OF THE CASE

Plaintiff is a former custodial worker who worked for Defendant AW PROFESSIONAL & MAINTENANCE SERVICE, INC. ("AW Professional" from September 2018 until March 2, 2021. SOF, ¶ 1. AW Professional is a small company that provides light janitorial services to six (6) condominium buildings/complexes in south Florida. *Id.,* ¶2. Plaintiff has brought the instant suit alleging violations of:

- the Florida Omnibus AIDS Act ("FOAA"), Fla. Stat. § 760.50 (Count I);

- the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA") (Counts II and III);

- Florida's Worker's Compensation anti-retaliation statute, Fla. Stat. §440.205 (Count IV)

- Florida common law ("negligent supervision, training and retention") (Count V);

- the Fair Labor Standards Act, 29 U.S.C. § 201-219 ("FLSA") (Counts VI and VII).[2]

*Complaint* [DE 1].

Defendants now seek summary judgment in their favor as to the following issues:

| | |
|---|---|
| Count I: | Plaintiff alleges he was terminated the very day Defendants became aware he was HIV positive. As detailed herein and in Defendants' SOF, the undisputed facts establish that Defendants were fully aware of Plaintiff's HIV status long before the date Plaintiff's employment concluded.[3] |
| Count II and III: | Plaintiff alleges that the corporate Defendants violated the anti-interference and anti-retaliation provisions of the FMLA. As detailed *infra,* Defendants (singly or |

---

[2] In addition to the seven (7) counts brought in the instant suit, Plaintiff also filed a worker's compensation claim (against Defendant AW Professional, which its insurance carrier settled in September 2021) *See OJCC Settlement*, attached as EXHIBIT 4 to SOF; and a U.S. Equal Employment Opportunity Commission Charge of Discrimination alleging both sexual orientation and disability discrimination in connection with his employment with Defendants. In total, Plaintiff alleges at least 5 (five) different sources of animus, alleging he was terminated for being gay, for being HIV-positive, for having a disability, for having filed a worker's compensation claim, and for having requested FMLA leave.

[3] It is Defendants' position that Plaintiff was not terminated, but rather left his employment; however, summary judgment can be granted in full here without resolving that factual issue.

|  |  |
|---|---|
|  | collectively) have never had 50 full-time employees in their employ, and thus are not a covered entity under the Act. |
| Count IV: | Plaintiff alleges he was terminated in retaliation for having filed a worker's compensation claim, in violation of Fla. Stat. §440.205. Plaintiff was never terminated, but voluntarily resigned his employment. More importantly though Defendants were not aware of Plaintiff's claim of a workplace injury until *after* his employment concluded. Alternatively, even if the Court declines to grant summary judgment on this Count, the Court should decline to exercise its supplemental jurisdiction over this particular claim. |
| Count V: | Plaintiff alleges that the corporate Defendants engaged in "negligent supervision, training and retention" as to Defendant Wilma Andrade. This claim fails as a matter of law and logic because Andrade, the 100% owner of all three (3) corporate Defendants, cannot be held liable for negligently "supervising, training and retaining" herself. |
| Counts VI and VII: | Plaintiff alleges Defendants violated the overtime wage provisions of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. 201 *et seq.,* ("FLSA"). However, Plaintiff cannot show individual or enterprise coverage sufficient to trigger the Act's applicability. |
| As to all Counts: | Plaintiff alleges that Defendant Andrade was individually an "employer" with respect to his HIV discrimination (Fla. Stat. §760.50) and worker's compensation retaliation (§440.205) claims. However, an individual generally is not considered an "employer" within the meaning of those two statutes, which only provide for liability against employing *entities.* Additionally, while under the FLSA an individual often can be found to be an "employer," Plaintiff cannot make a sufficient showing as to Ms. Andrade being one in this case.[4] |

---

[4] Plaintiff did not sue Andrade individually under the FMLA as the Complaint indicates those causes were brought **only** against the corporate Defendants. The counts relating to HIV discrimination (Fla Stat. §760.50) (Count I) and worker's compensation retaliation (§ 440.205) (Count IV) do not appear to have any limitations as to which Defendants they are against, so Defendants assume, (for summary judgment purposes, at least) that those counts purport to be against all Defendants, including Andrade.

## MEMORANDUM OF LAW

**Standard on Motion for Summary Judgment.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (further citation omitted).

**I. Defendants Are Entitled To Summary Judgment As To Count I As The Undisputed Facts Establishes That Defendants Were Fully Aware of Plaintiff's HIV Status Long Before His Employment Concluded.**

Under Fla. Stat. §760.50, it is unlawful for an employer to terminate an employee because of the employer's knowledge or belief that the employee is HIV-positive. §760.50(3)(b).

Count I alleges that the Defendants learned Plaintiff had HIV on March 2, 2021, and he was terminated on the spot. *Complaint* ¶¶ 43-44.

Plaintiff's claim is one of retaliation, and a plaintiff may establish a *prima facie* case of retaliation in one of two ways: (1) by direct evidence of retaliatory intent; or (2) through circumstantial evidence.

Here, where no direct evidence of retaliation exists, Plaintiff may establish a *prima facie* claim of retaliation through circumstantial evidence. In evaluating whether a plaintiff has set forth a *prima facie* case of retaliation through the use of circumstantial evidence, the Eleventh Circuit has applied the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a *prima facie* case of retaliation, which creates a presumption that the employer retaliated against him. *Curtis v. Broward Cnty.,* 292 F. App'x 882, 883 (11th Cir. 2008) (citing *Brooks v. Cnty. Comm'n of Jefferson County*, 446 F.3d 1160, 1162 (11th Cir. 2006)).

The only plausible evidence supporting Plaintiff's claim is Plaintiff's assertion of the temporal proximity between when he alleges Defendants learned of his HIV status and the conclusion of his employment.

Under Eleventh Circuit case law, close temporal proximity between the protected activity and the adverse action may suffice to establish a causal connection. *Bass,* 256 F.3d at 1119; Entrekin, 376 F. App'x at 996; *Curtis,* 292 F. App'x at 885 (*citing Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007)); *See also Vega v. Cingular Wireless*, 568 F. Supp. 2d 180, 191 (D.P.R. 2008) ("The proximity between the protected conduct and the adverse action may serve as evidence of causation."). Where a plaintiff seeks to establish a causal connection through temporal proximity, however, the temporal proximity must be 'very close[.]'"10 Curtis, 292 F. App'x at 885 (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

However, here there is no temporal proximity between when Defendants learned of Plaintiff's HIV status and when Plaintiff claims to have been terminated.[5] SOF, ¶¶20-21.

---

[5] Plaintiff was not terminated; rather he voluntarily quit his job with AW Professional. However, even if one assumes (for summary judgment purposes only), that Plaintiff was terminated from his employment,

5

The unrebutted evidence shows that Defendants were aware of Plaintiff's HIV status at least eight months before his employment ended. *Id.* As such, there is insufficient temporal proximity between the "protected activity" (Defendants learning of Plaintiff's HIV status) and the adverse employment action to establish a causal nexus and a *prima facie* case on this claim.

As such, without evidence from Plaintiff to cast doubt on Defendants' averments that they were aware of his status, summary judgment should be granted in Defendants favor as to Count I.

### II. Defendants are Entitled to Summary Judgment as to Counts II and III as They (Each and Collectively) Have Never Had 50 Full-Time Employees In Their Employ, And Thus, Are Not Covered Entities Under The FMLA.

Counts II and III of the Complaint allege claims for FMLA interference and retaliation, respectively, against all corporate Defendants. *Complaint,* pp. 7-19. Plaintiff also alleges that all three (3) corporate Defendants "constitute a single, integrated enterprise. *Id.* at ¶ 13.

Even if one assumes *arguendo* that all three (3) corporations constitute an integrated enterprise (they are not), the undisputed facts establish that even if combined, the corporate Defendants never had close to the requisite number of employees to be covered by the FMLA.

For the "statute to apply, the employer(s) at issue must have at least 50 employees within a 75 mile radius of the worksite. See 29 U.S.C. § 2611(2)(B)(ii)." *Morrison v. Magic Carpet Aviation,* 383 F.3d 1253, 1254 (11th Cir. 2004).

The record establishes that Defendant AW Professional had only between 32 and 38 full-time employees at all times relevant to this action (Plaintiff's period of employment from September 2018 – March 2, 2021). SOF, ¶11. Additionally, Defendants Andrade Holdings and Boca Service have never had any employees. *Id.* ¶¶ 7, 9.

6

Plaintiff has not sued Ms. Andrade individually under the FMLA counts, See Complaint, Counts II and III. And even if Ms. Andrade had been sued individually under the FMLA, she does not employ anyone personally. Decl. of Andrade, ¶13.

Thus, even if one were to integrate all Defendants or apply a "joint enterprise" or "joint employer" theory to the issue, all Defendants combined do not employ the 50 or more employees required to trigger FMLA coverage, and accordingly are entitled to judgment on the Plaintiff's FMLA claims as a matter of law. *Id. See Exemar v. Urban League of Greater Miami, Inc.,* 585 F. Supp. 2d 1377, 1380 (S.D. Fla. 2008) ("However, even assuming that the Urban League is integrated with the fifteen other entities, Plaintiff has failed to raise a genuine issue of fact regarding whether the combined number of employees is fifty or more, as is required to trigger application of the FMLA.").

As such, <u>all</u> Defendants are entitled to summary judgment in their favor as to Counts II and III.

> **III.    Defendants Had No Knowledge Of Plaintiff's Claim Of A Workplace Injury Until <u>*After*</u> His Employment Concluded, And Thus Summary Judgment Is Appropriate As To The Fla. Stat. §440.205 Claim. Alternatively, If The Court Does Not Grant Summary Judgment On This Count, It Should Decline To Exercise (Or Decline To Continue To Exercise) Discretionary Supplemental Jurisdiction As To Count IV.**

Plaintiff alleges that on March 2, 2021 he was terminated from his employment because of his claim for worker's compensation benefits stemming from an alleged workplace injury on January 22, 2021. SOF ¶16-17; *Complaint* ¶¶ 62-67. However, Plaintiff never filed a claim for worker's compensation benefits until March 24, 2021. SOF, ¶17; EXHIBIT 3. Defendants only learned of this claim and of the alleged workplace injury in the days *after* this claim was filed

with the Florida OJCC. SOF, ¶18. As such, Plaintiff's claim fails because Defendants were unaware of the protected conduct prior to the alleged adverse employment action.

To establish a causal connection in a retaliation claim, a plaintiff must show that "the protected activity and the adverse action are not completely unrelated." *Davis v. Coca-Cola Bottling Co., Consol.,* 516 F.3d 955, 978 n. 52 (11th Cir. 2008). To demonstrate that these two elements are not completely unrelated, the plaintiff must show that "the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomm., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000), *cert. denied*, 532 U.S. 1037 (2001). In other words, a decision maker cannot have been motivated to retaliate by events of which the decision maker is unaware. *Id.*

Section 440.205 is a mere one sentence and reads:

> *No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.*

§440.205.

Because Defendants were unaware of any "valid claim for compensation or attempt to claim compensation" benefits by Plaintiff, summary judgment is due to be granted in Defendants' favor on this Count.

### A. Alternatively, If The Court Does Not Grant Summary Judgment On This Count, It Should Decline To Exercise (Or Decline To Continue To Exercise) Discretionary Supplemental Jurisdiction As To Count IV.

The instant action was originally brought in this Court, rather than having been removed from state court. While there is a sizable body of law concerning whether state worker's compensation claims may be ordinarily removed to federal court, the issue in this case is instead

whether sufficient supplemental jurisdiction (as fleshed out in discovery) exists for this Court to exercise jurisdiction over Count IV.

In a case very similar to the instant action (also bringing both an FLSA claim and a §440.205 claim), Judge Ursula Ungargo provided a well-reasoned analysis of why exercising federal supplemental jurisdiction over the §440.205 claim was not prudent, even if there is some overlap of the operative facts:

> "[E]ven if [the court] had the power to exercise supplemental jurisdiction over Plaintiff's retaliation claim for violation of Florida Statutes §440.205, it would decline to exercise its discretion to do so.
>
> As a general rule, "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises just one constitutional case.'" *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 164-65 (1997). Congress has codified those principles in the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* at 165 (quoting 28 U.S.C. § 1367(a)). "That provision applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one 'of which the district courts . . . have original jurisdiction.'" *Id.* (citations omitted). "Once subject matter jurisdiction exists, a district court has constitutional authority to hear related state claims even if the federal claim is later dismissed . . . ." *United Int'l Holdings, Inc. v. Wharf (Holdings) Lt*d., 210 F.3d 1207, 1222 (10th Cir. 2000).
>
> However, the exercise of supplemental jurisdiction is discretionary. *Int'l College of Surgeons*, 522 U.S. at 172. A federal district court may decline to exercise supplemental jurisdiction over a state law claim if:
>
> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional

9

> circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).
>
> In this case, Plaintiff's retaliation claim for violation of Florida Statutes §440.205 involves novel and complex issues of state law that are wholly unrelated to Plaintiff's FLSA claim. Thus, pursuant to 28 U.S.C. § 1367(c)(1), and in consideration of the interests of judicial economy, convenience and fairness to the litigants, even if this Court had the power to exercise supplemental jurisdiction over Plaintiff's retaliation claim for violation of *Florida Statutes* § 440.205, it would decline to exercise its discretion to do so.

*Ayes v. H & R of Belle Glade, Inc*., (*Order on Plaintiff's Motion to Reman*d), 2008 WL 1840714 (S.D. Fla. Apr. 21, 2008) (copy attached). *See also, Dennis v. Subway 726, LLC, et al.,* No. 15-61431-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 187350 (S.D. Fla. Nov. 10, 2015) (finding the exercise of federal jurisdiction over a §440.205 claim is discretionary and declining court to do so as the alleged facts supporting the retaliation claim, while having some overlap, were separate from the FLSA claims).

This Court should apply the same reasoning here. The facts needed to support Plaintiff's §440.205 state claim are distinct from those facts which support Plaintiffs' other employment claims. Put simply, whether Defendants failed to pay Plaintiff overtime wages or whether his alleged termination was motivated by an animus apart from a worker's compensation claim has no strong relation to the question of whether Defendants violated §440.205 with respect to Plaintiff's alleged termination. Simply put, the allegations of the Complaint fail to give the Court an adequate factual and/or legal basis to exercise supplemental jurisdiction over Count IV. As such, Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over this unrelated state claim, and dismiss Count IV from this action.

For the above reasons, Plaintiff respectfully requests that this Honorable Court decline to exercise (or continue to exercise) supplemental jurisdiction over Plaintiff's unrelated state law claim, and dismiss Count IV from this action.

> IV. **Plaintiff's Common Law Claim of "Negligent Supervision, Training And Retention" (Count V) Fails As a Matter Of Law Because A Sole Owner of a**

### Corporation Cannot Be Held Liable For Negligently Supervising, Training And Retaining Oneself, Nor Are The Alleged Actions Committed By Ms. Andrade Criminal Acts or Willful "Torts" Recognized Under Florida Common Law.

Plaintiff alleges in Count V that the "Corporate Defendants recruited, hired, instructed, trained, employed, supervised and retained ANDRADE. Therefore, Corporate Defendants owed Plaintiff, its employee, a duty of care." *Complaint,* ¶74. Plaintiff alleges that "Corporate Defendants knew or should have known of ANDRADE's despicable actions, and should have trained ANDRADE on how to conform with Worker's Compensation laws and the FMLA." *Id.,* ¶75.

This Count fails to state an actionable claim on several grounds. First, legal theories such as negligent hiring, supervision, training, retention and the like are theories of liability which "permit an injured plaintiff to recover damages against an employer for acts of an employee clearly committed *outside* the scope and course of employment. *Magill v. Bartlett Towing, Inc.,* 35 So. 3d 1017, 1020 (Fla. 5th DCA 2010) (emphasis added) citing *Garcia v. Duffy,* 492 So. 2d 435, 438 (Fla. 2d DCA 1986). Under these types of "theories of liability, an employer can be held responsible for an employee's *willful torts* if the employer knew or should have known that the employee was a threat to others." *Id.,* (emphasis added) citing *Williams v. Feather Sound, Inc.,* 386 So. 2d 1238 (Fla. 2d DCA 1980). In other words, these common law legal causes of action apply to situations where an employer's employee or agent commits a tortious and/or criminal act against another individual and the employer had knowledge of the employee's likelihood or propensity to harm. That is not even remotely the situation at bar: nothing Plaintiff alleges Ms. Andrade did amounts to a willful tortious act recognized under Florida common law or a criminal act.

Secondly, this claim fails as a matter of logic because Andrade is the 100% sole owner of all three (3) corporate Defendants: it defies logic that a sole individual corporate owner can be held liable for negligently supervising, training and retaining oneself.

As such, Count IV fails as a matter of law and should be resolved in Defendants' favor on summary judgment.

### V.     Plaintiff Cannot Sufficiently Show "Individual" Or "Enterprise" Coverage To Trigger Applicability of The FLSA To This Case.

The FLSA requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty (40) hours per week. See 29 U.S.C. § 206(a) (minimum wage); id. § 207(a) (overtime pay). Either "individual" or "enterprise" coverage can trigger the Act's applicability.

However, Plaintiff here cannot make out a prima facie case of coverage under either theory.

"The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting *interstate commerce*, not activities *merely affecting* commerce." *Thorne v. All Rest. Servs.,* 448 F.3d 1264, 1266 (11th Cir. 2006) (emphasis added). "Therefore, for an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel. 29 C.F.R. § 776.23(d)(2)(2005); 29 C.F.R. § 776.24 (2005)." *Id.*

There is no evidence set forth by Plaintiff in discovery or in the record at that Plaintiff worked for an instrumentality of interstate commerce, or that he regularly used the

instrumentalities of interstate commerce through his job duties. He did not utilize any instrumentalities of interstate commerce (such as purchasing, selling, or using credit or debit cards). Decl. of Andrade, SOF, ¶¶23-24. Additionally, Plaintiff did not have any contact with the public as part of his job duties, nor was he communicating with anyone outside the jobsite as part of his job. *Id.*

As to "enterprise" coverage, an employer falls under the enterprise coverage section of the FLSA if it 1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and 2) has at least $ 500,000 of "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A).

Plaintiff cannot meet the first prong of enterprise coverage as he was not engaged in commerce or in the production of goods for commerce, or was an employee "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."

As such, Defendants are entitled to summary judgment on Plaintiff's FLSA claims because there is no evidence that of coverage of the Act.

### VI. Ms. Andrade Is Not An "Employer" With Respect To Plaintiff's HIV Discrimination, Worker's Compensation Retaliation, And FLSA Claims.

**A. Ms. Andrade cannot be held individually liable under §760.50.**

The Eleventh Circuit held in *Albra v. Advan, Inc.,* 490 F.3d 826 (11th Cir. 2007) that because §760.50 was patterned after and contemplated to be construed in a similar statutory manner as Title VII and the ADA, individual liability generally is precluded. As the *Albra* court explained:

> Because the [Florida Omnibus AIDS Act (FOAA), Fla. Stat. § 760.50] provides that persons with HIV or AIDS "shall have every protection made available to handicapped persons," Fla. Stat. §760.50(2), the [Florida Civil Rights Act ("FCRA"] prohibits employment discrimination on the basis of an individual's handicap, Fla. Stat. §760.10(1)(a), and the FCRA is to be "construed in conformity with the" ADA,… **we conclude that the FOAA's employment discrimination provisions shall also be construed in conformity with the ADA.** And because we have held that individual liability is precluded for violations of the ADA's anti-discrimination provision in the employment context, **we thus conclude that an individual may not be sued privately in his or her personal capacity for violating the FOAA's employment discrimination provisions.**

*Albra,* 490 F.3d 826, 835 (emphasis added) (internal citations omitted).[6]

As such, Ms. Andrade cannot be individually liable under §760.50, and summary judgment is due to be entered in her favor on this issue.

### B.  Ms. Andrade cannot be held individually liable under §440.205.

As the supreme court explained in *Scott v. Otis Elevator Co.,* 572 So. 2d 902, 903 (Fla. 1990), Florida does not recognize a common-law tort for retaliatory discharge; instead, the legislature created section §440.205 to allow a statutory cause of action for wrongful discharge. A statute in derogation of the common law must be construed narrowly. *Carlile v. Game & Fresh Water Fish Comm'n,* 354 So. 2d 362 (Fla. 1977).

Section 440.205 is one sentence and merely provides:

> *No **employer** shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.*

§440.205 (emphasis added).

---

[6] *See also Huck v. Mega Nursing Services, Inc.,* 989 F. Supp. 1462, 1464 (S.D. Fla. 1997) (finding because "the spirit of" §760.50 is similar to that of Title VII and the ADA… the Florida Legislature did not intend to provide a cause of action against individuals, but rather §760.50 "creates a cause of action for employees who have been discriminated against by their employing entity").

Florida courts that have examined the issue have concluded an aggrieved employee must sue his/her employing entity(s) and "§440.205 cannot be read to authorize a suit against an employee in his or her individual capacity." *Superior Brands v. Rogers,* 646 So. 2d 257, 1994 Fla. App. LEXIS 11505 (Fla. 1st DCA 1994). Thus, absent some sort of legal theory akin to "piercing the corporate veil," Ms. Andrade cannot be held personally liable under §440.205, and summary judgment should be entered in her favor on this issue.

### C. Plaintiff has not made a sufficient showing that Ms. Andrade is an "employer" within the meaning of the FLSA.

Unlike most other employment statutes, under the FLSA and under certain circumstances corporate officers or owners of corporations such as Ms. Andrade can be deemed to be "employers" within the meaning of the Act. However, Plaintiff's bare assertions that Ms. Andrade owns AW Professional are not sufficient to automatically establish her as an "employer" under the Act.[7]

Rather, Plaintiff must demonstrate that Ms. Andrade exercised operational control over the Defendant or had some "direct responsibility for the supervision" of the Plaintiff at the worksite where he worked.

---

[7] An "employer" can include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) (citing cases). However, finding an individual owner to be an "employer" under the Act is not automatic just because they are an owner. *See Patel v. Wago*, 803 F.2d 632, 638 (11th Cir. 1986) (recognizing applicable test for corporate officer liability under the FLSA and affirming district court's finding that Wargo was not automatically an employer just "by virtue of his status as President, director, and a principal stockholder." *Id*. at 637. "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638. Liability under the FLSA can attach to an individual officer or manager of a company when that person has operational control of "significant aspects" of the business' day-to-day functions, which includes financial management. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008).

Plaintiff's own sworn testimony illustrates that Ms. Andrade did not exercise the requisite amount of operational control over the worksite where Plaintiff worked and did not have direct responsibility for the supervision of Plaintiff. SOF, ¶25.

Plaintiff testified at deposition that he had almost no contact with Ms. Andrade during his employment. "I would never see her." "… we used to not have contact with her." Depo. of Silva at 30:18-31:7 "She would come, leave whatever she had to leave over there and go. No way to communicate with her." *Id.* at 31:2-7. Plaintiff averred that despite working for AW Professional for nearly two-and-a-half years, he still did not know Ms. Andrade's last name at the time of his deposition in June, 2021. *Id.* at 23. Plaintiff further testified that during his employment he never reported to anyone besides two individuals, a "Simon" and Maira. *Id.* at 22:22-23:2.

It is Plaintiff's burden to show that Ms. Andrade had operational control of the corporate employer sufficient enough for the imposition of liability as an "employer" under the FLSA. Plaintiff has testified he had almost no contact with Ms. Andrade during his employment, and did not even know her last name after nearly two-and-a-half years of employment. As such, he cannot, on the record before the Court, meet his burden to set forth evidence sufficient to justify a finding that Ms. Andrade is an "employer" within the meaning of the FLSA.

## **CONCLUSION**

For the aforementioned reasons, the Court is due to grant Defendants summary judgment as to all Counts of the Complaint.

**DATED:**   April 1, 2022         Respectfully filed,

                                BY:  *s/Dion J. Cassata*
                                    Dion J. Cassata, Esq.
                                    Fla. Bar No. 672564
                                    dion@cassatalaw.com

CASSATA LAW, PLLC
Boca Crown Centre
7999 North Federal Highway, Suite 202
Boca Raton, Florida 33487
Telephone:  (954) 364-7803

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 1, 2022 I electronically filed the foregoing with the Clerk of the Court with a copy of the same to be served upon all counsel of record via the CM/ECF system.